Adam CHADA, Appellant,

v.

Pauline CHADA and Paul Chada, Appellees.

Superior Court of Pennsylvania.

Argued May 23, 2000.

Filed July 3, 2000.

---

Robert Vincler, Pittsburgh, for appellant.

James D. Dennison, Brookville, for appellees.

Before HUDOCK, MUSMANNO and BROSKY, JJ.

BROSKY, J.

¶ 1 This is an appeal from the order entered on August 26, 1999 by the Court of Common Pleas of Jefferson County, granting summary judgment in favor of Appellees Pauline and Paul Chada, based on the defenses of res judicata and collateral estoppel. We affirm the order of the trial court.

¶ 2 The trial court ably summarized the background of this case as follows:

The case before us arises out of a conveyance of real estate in August of 1985, wherein the [Appellant] Adam Chada and the [Appellee] Pauline Chada, who were then husband and wife, conveyed a farm in Warsaw Township, Jefferson County, Pennsylvania, (held by Adam and Pauline as tenants by the entireties) to their son, Paul Chada, [an Appellee] herein. The [Appellant] avers that said transfer was the result of an oral property settlement agreement between the [Appellant] and the [Appellee], Pauline Chada, who were at that time separated and were contemplating divorce. The [Appellant] asserts that the transfer to Paul was in fact a transfer to Pauline, however, Paul was merely acting as her agent/nominee. The oral agreement, according to the [Appel-

lant], is that, in return for this transfer of the Warsaw Township property and payment of a sum of $100,000.00, Pauline agreed to accept the same in full payment and satisfaction of all of her legal rights under the law for the distribution of marital property. After the transfer, the [Appellant] asserts that the [Appellee] Pauline rescinded the contract by filing a complaint in divorce in 1987, in the Court of Common Pleas of Allegheny County, which included a claim for equitable distribution. A divorce decree, with provisions for equitable distribution, was issued on April 3, 1991. Subsequent thereto, the [Appellant] and the [Appellee] Pauline Chada were involved in the litigation of numerous petitions concerning the distribution of assets and the interpretation of the final decree. On August 5, 1996, a conference was held in Allegheny County before the Honorable Lawrence W. Kaplan, wherein the [Appellant] and the [Appellee] Pauline Chada entered into a full and complete settlement agreement as to all issues related to the distribution of assets. The opening remarks of Judge Kaplan were as follows:

We, I believe, have arrived at a significant point in history because it would appear, based upon what has been represented to me by counsel, that *we now have a final settlement in the case of Pauline Chada vs. Adam Chada,* this being an effort to make a final distribution of the escrow account that was maintained in this case for the purpose of meeting certain obligations in accordance with the direction of the master who had entered his order, approved by court in, I believe, 1991. *I have met with counsel in chambers and there's been a representation made that the clients are willing to accept a settlement based upon a certain formula which take[s] into account claims of both parties, as well as a waiver of claims of both parties in regard to certain items.* Based upon what has

been represented to me, as the Judge who has been supervising this case for eight years, the settlement that is proposed is a fair and reasonable one, and so we are happy that the parties have seen fit to accept the settlement.

(Settlement conference before Judge Kaplan; Chada vs. Chada, No. FD87-3182, Court of Common Pleas of Allegheny County, August 5, 1996 [at 1-2] ). In the course of the same conference, *then counsel for the [Appellant], a Mr. Chester, indicated as follows: "There will not be anymore court proceedings involving Adam Chada and the Mrs. There is no legitimate reason for the parties to come into any contact with each other in the future, and that's that. They will not see each other in court any longer or ever again with regard to the economic issues of this case. They are closed forever."* (Settlement conference before Judge Kaplan; Chada vs. Chada. No. FD 87-3182, Court of Common Pleas of Allegheny County, August 5, 1996 [at 7] ).

On March 30, 1998, the [Appellant] filed the present action in equity, requesting that this court declare a constructive trust as to the Warsaw Township property, require an accounting of all rents and profits from the real estate, and to issue an injunction against the [Appellee] Paul Chada directing him to convey the property to the [Appellant] free and clear of any encumbrances, and to award punitive damages.

The [Appellees] have responded with the assertion that the oral agreement never existed; that no separation took place until July of 1986; and, that the conveyance was the result of the desire to avoid inheritance taxes and to make the transfer to their only child and sole heir. By way of new matter, the [Appellees] have raised the issues of laches, estoppel, release, statute of limitations, and res judicata.

Trial Court Opinion and Order, 8/26/99, at 2-4 (emphasis supplied).

¶3 On August 26, 1999, the trial court granted the Appellees' Motion for Summary Judgment based upon the doctrines of collateral estoppel and res judicata. This appeal followed.

¶4 Appellant has framed a single issue for our review, *i.e.,* "Did the Lower Court commit an error of law by granting the [Appellees'] Motion for Summary Judgment on August 26, 1999 based on the doctrines of collateral estoppel and res judicata?" Appellant's Brief at viii. For the reasons that follow, we find that the court did not so error, and affirm the order of the trial court.

¶5 Our standard of review in an appeal from an order granting summary judgment is plenary. We apply the same standard as the trial court, reviewing all of the documentary evidence of record to determine whether there exists a genuine issue of material fact that would preclude the entry of summary judgment, and, if not, whether the moving party is entitled to judgment as a matter of law. This court will not overturn a trial court's grant of summary judgment in the absence of either error of law or clear abuse of discretion. *Kirby v. Kirby,* 455 Pa.Super. 96, 687 A.2d 385, 387 (1997) *appeal denied,* 548 Pa. 681, 699 A.2d 735 (1997) (citations omitted).

¶6 Summary judgment may be entered only if the pleadings, depositions, affidavits and all other materials together, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035.2.

The trial court must examine the record in the light most favorable to the non-moving party and resolve all doubts against the moving party. The burden is on the moving party to prove that no genuine issue of fact exists. However, when the moving party carries its initial burden, the adverse party may not rest upon the allegations or denials contained in the pleadings, but must respond by showing there is a genuine issue for trial. If the adverse party does not so respond, summary judgment will be entered in favor of the moving party. Finally, in considering the trial court's ruling, we are not bound by the court's conclusions of law, but may draw our own inferences and reach our own conclusions.

*Adamski v. Allstate Insurance Co.,* 738 A.2d 1033, 1035–36 (Pa.Super.1999) (citations omitted).

¶7 Since Appellant challenges the lower court's application of the doctrines of res judicata and collateral estoppel a review of the elements of each doctrine is necessary to our disposition. These doctrines serve to preclude the litigation, respectively, of claims and issues that have previously been litigated.

Where there has previously been rendered a final judgment on the merits by a court of competent jurisdiction, the doctrine of res judicata will bar any future suit on the same cause of action between the same parties. *See* 10 Standard Pennsylvania Practice 2d § 65:32. Invocation of the doctrine of res judicata (claim preclusion) requires that both the former and latter suits possess the following common elements:

1. identity in the thing sued upon;

2. identity in the cause of action;

3. identity of persons and parties to the action; and

4. identity of the capacity of the parties suing or being sued.

*Matternas v. Stehman,* 434 Pa.Super. 255, 642 A.2d 1120, 1123, (1994).

Collateral estoppel (issue preclusion) is closely related to res judicata, but bears certain distinctions:

We note that the doctrine of res judicata, subsumes the more modern doctrine of issue preclusion which forecloses re-litigation in a later action, of an issue of fact or law which was actually litigated and which was necessary to the original judgment. Col-

lateral estoppel applies if (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment.

Collateral estoppel does not require identity of causes of action or parties. However, while res judicata will bar subsequent claims that could have been litigated in the prior action, but which actually were not, collateral estoppel will bar only those issues that actually were litigated in the prior proceeding.

*Id.* at 1125 (internal citations omitted).

■ ¶ 8 Appellant does not challenge the existence of any of the elements of the two doctrines with the exception of the element of the identity of the cause of action/issue. Appellant argues that the causes of action differ and that the ultimate issue in the instant case is whether Pauline and Paul Chada engaged in a fraudulent conspiracy to deprive Appellant of his real property, whereas the ultimate issue in the previous divorce case was the distribution of marital assets.[1] We, like the trial court, find this assertion disingenuous.[2]

1. Appellant's Brief at 5.

2. Trial Court Opinion and Order, 8/26/99, at 5.

3. It cannot be disputed that the Court of Common Pleas of Allegheny County had authority to rule on the claims now asserted by Appellant. 23 Pa.C.S.A. § 3104 provides:
(a) Jurisdiction.—The courts shall have original jurisdiction in cases of divorce and for annulment of void or voidable marriages and shall determine, in conjunction with any decree granting a divorce or an-

¶ 9 Appellant's cause of action is couched in terms of a claim of fraud, however, it is patently obvious that Appellant's objective is to re-litigate ownership of a parcel of real estate, formerly held as tenants by the entireties, and allegedly transferred to son pursuant to an oral marital settlement agreement between husband and wife. Unfortunately for Appellant, his claim could and should have been more fully developed within the context of the·equitable distribution litigation pending before the court entertaining the divorce action.[3]

■ ¶ 10 Although the two lawsuits embody differently entitled "causes of action" (equitable distribution vs. fraud), we cannot and will not elevate form over substance. "The form in which two actions are commenced does not determine whether the causes of action are identical." *Dempsey v. Cessna ·Aircraft Co.,* 439 Pa.Super. 172, 653 A.2d 679, 682 (1995) *appeal denied,* 541 Pa. 631, 663 A.2d 684 (1995).

The fundamental principle upon which [res judicata] is based is that a court judgment should be conclusive as between the parties and their privies in respect to every fact which could properly have been considered in reaching the determination and in respect to all points of law relating directly to the cause of action and affecting the subject matter before the court. *The essential inquiry is whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties had an opportunity to appear and assert their rights.* When

nulment, the following matters, if raised in the pleadings, and issue appropriate decrees or orders with reference thereto, and may retain continuing jurisdiction thereof;
(1) The determination and disposition of property rights and interests between spouses, including any rights created by any antenuptial, postnuptial or separation agreement and including the partition of property held as tenants by the entireties or otherwise and any accounting between them. . . .

the cause of action in the first and second actions are distinct, or, even though related, are not so closely related that matters essential to recovery in the second action have been determined in the first action, the doctrine of res judicata does not apply.

*Hammel v. Hammel,* 431 Pa.Super. 230, 636 A.2d 214, 218 (1994) (citations omitted, emphasis supplied).

¶ 11 It is clear, upon our review of the record before us, that Appellant had a full and fair opportunity to litigate the "ultimate and controlling issues" *i.e.* ownership of the real property and any alleged agreement pertaining thereto, although he may not have availed himself of the opportunity to do so. Appellant did allude to a dispute with respect to the marital property status of the subject real estate during the course of the divorce litigation. However, despite the fact that the alleged oral settlement agreement and transfer to son occurred prior to the filing of the divorce action by Pauline Chada in 1987, (the alleged act of breach of the alleged agreement), Appellant did not pursue or develop his claim in the divorce matter that such an agreement existed; that he was the victim of an alleged fraudulent conspiracy; or that the real estate should be included as marital property for purposes of equitable distribution. We must ask rhetorically, if Appellant had reached an acceptable settlement as to all property issues prior to the divorce action, and was truly a victim of a fraudulent conspiracy, why would he not more fully assert a claim that the economic issues had been resolved previously by the parties, or that the real estate should nonetheless be included in the marital estate. Given the facts allegedly known to him at the time of the equitable distribution proceedings in 1991, and known to him at the settlement conference in 1996,

we can ascertain no legitimate reason why Appellant would not raise his claims then and there. Appellant's present argument belies logic and the record before us.[4]

¶ 12 As the trial court cogently observed:

The case before [us] presents a text book example of both the theory of res judicata and collateral estoppel. Initially, any claim by the [Appellant] that the 1985 transfer involved some sort of fraud on the part of the [Appellee] Pauline Chada to obtain an unfair portion of the marital assets could *certainly* have been and certainly should have been raised by the [Appellant] during the extensive and lengthy litigation in Allegheny County. Furthermore, the case before [us] is, in every respect, a claim by the [Appellant] for equitable distribution, and it is abundantly clear that the issue of equitable distribution of the marital estate between Adam and Pauline Chada has been previously addressed and decided on the merits. Accordingly, we must grant the [Appellees'] Motion for Summary Judgment. . . .

Trial Court Opinion and Order, 8/26/99, at 5 (emphasis in original).

¶ 13 We agree with the learned trial court's conclusion that Appellant previously had a full and fair opportunity to pursue the claims he now raises, and although he may have failed to do so, the doctrine of res judicata bars re-litigation of those claims.

■■■ ¶ 14 Appellant's claims fail for another reason. During the settlement conference in the divorce proceeding, it was explicitly stated for the record and agreed to by Appellant's then counsel, and then Appellant himself, that *ALL* issues that

---

**4.** A review of Appellant's testimony from the Master's Hearing also reveals a much different reason for transferring the property to the parties' son than is being asserted by Appellant in this action. Adam Chada testified: "I was 72 years old and we was figuring on—I

was figuring on going up to see St. Pete. I didn't think I'd be around as long as I am. And I wanted some of the property to go where I wanted it to go. I wanted that to go to Paul." Master's Hearing, 12/27/90, at 345.

could be or had been raised (including claims as to real property) were being disposed of at that time. Indeed, Attorney McCarthy, counsel for Mrs. Chada, stated to the court:

> Your Honor, *it's an accurate representation of what has been agreed upon by the parties, which is the following understanding as to what it means, that this is settled forever, it means that all issues that arise as a result of this marriage which have previously existed, currently exist, or could exist in the future, have been resolved, whether they be in the form of issues litigated before, issues that could have been litigated before, whether it refers to bonds, to the stocks, or to the real estate,* and there will be no further actions for enforcement, and once these funds have been transferred in accordance with the terms of this Order, *that is the level of finality that we seek, in that there will be no further litigation brought by Adam Chada against Pauline Chada or against Adam Chada by Pauline Chada.*

¶ 15 Appellant's then counsel, Mr. Chester replied: *"So agreed, Judge."* Later, Appellant states: *"I agreed to everything."* Settlement conference before Judge Kaplan; Chada vs. Chada, No. FD87–3182, Court of Common Pleas of Allegheny County, August 5, 1996, at 7–9 (emphasis supplied).

¶ 16 Despite Appellant's failure to more fully develop his claims, the appropriate time and place to do so was before the Court of Common Pleas of Allegheny County during the divorce action. Moreover, Appellant, represented by able counsel, agreed on the record, that all claims relative to all economic issues arising out of the marriage, including claims as to real estate, were being disposed of. Thus, the claims Appellant now asserts have been litigated for purposes of the doctrine of collateral estoppel, and therefore re-litigation of the ultimate issue of property own-

ership by means of the instant lawsuit, is likewise barred.

¶ 17 Certainly, the parties are entitled to rely on the finality of the litigation they both expressed their desire to achieve. Appellant's instant lawsuit is an effort to upset that finality and re-litigate ownership of the real estate; the ultimate issue which had been put to rest in the divorce action. We cannot and will not condone such efforts.

¶ 18 Accordingly, we affirm the order of the trial court.