J-A23034-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| BETSY STULL AND MOLLY NELSON, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| ARMSTRONG GAS COMPANY, LLC, | : | |
| EXCO RESOURCES (PA), LLC | : | |
| ASSIGNEE; MARY JO SMAIL, DELLA | : | |
| KATHY MARCINEK, ROBERT W. | : | |
| LAMBING, PATRICIA L. BUSH, GAIL Y. | : | |
| TURNER, GLORIA J. WALKER, AND | : | |
| ARTHUR W. BUSH, | : | |
| | : | |
| Appellees | : | No. 1952 WDA 2015 |

Appeal from the Order Entered November 16, 2015,
in the Court of Common Pleas of Armstrong County,
Civil Division, at No(s): 2015-0493-Civil

BEFORE:    LAZARUS, STABILE, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:        FILED: October 24, 2016

Betsy Stull and Molly Nelson (Appellants) appeal from the order entered November 16, 2015, which sustained the preliminary objections filed by EXCO Resources (PA), LLC, and joined by Armstrong Gas Company, LLC (AGC), Mary Jo Smail, Della Kathy Marcinek, Robert W. Lambing, Patricia L. Bush, Gail Y. Turner, Gloria J. Walker, and Arthur W. Bush (Appellees),[1] and dismissed Appellants' complaint in its entirety with prejudice.  We affirm.

The trial court summarized the underlying facts as follows.

---

[1] We will refer to Mary Jo Smail, Della Kathy Marcinek, Robert W. Lambing, Patricia L. Bush, Gail Y. Turner, Gloria J. Walker, and Arthur W. Bush as "Individual Appellees."

*Retired Senior Judge assigned to the Superior Court.

[Appellants], together with [Individual Appellees], are part owners of the mineral rights underlying a parcel of real property located in Manor Township, Armstrong County, Pennsylvania, identified as tax parcel number 131.00-01-48 (the "Property").[1]

_____

> [1] [Appellants] refer to themselves and [Individual Appellees] as the "Joseph A. Lambing Heirs." …

On or about April 12, 2011, [Appellants] and [Individual Appellees] entered into an oil and gas lease with [AGC] (the "Lease"). The Lease refers to [Appellants] and [Individual Appellees] collectively as the "Lessor." The Lease also indicates that [Appellants] each individually own a one-sixth interest in the mineral rights underlying an 82.6-acre parcel. It has a primary term of five (5) years, with a secondary term extending as long as "oil and gas, or either of them, and/or their constituents, is produced in paying quantities…, or this Lease is maintained in full force pursuant to any of its other provisions…."

The Lease states further:

> This lease shall terminate on December 31, 2011, unless Lessee shall pay to Lessor a bonus consideration of Thirty Five Hundred Dollars ($3,500.00) per acre. In consideration of the bonus consideration paid by Lessee, Lessor agrees that Lessee shall not be obligated to commence or continue any operations during the primary term….

> ***

> … Should it be determined that Lessor owns less than the entire interest in the tract described above, Lessor shall receive only that portion of the rentals and royalties hereinbefore provided which Lessor's interest bears to the entire interest …. [T]he rentals and royalties shall be divided among and paid to such several owners in the proportion that the acreage owned by each such owner bears to the entire leased acreage.

(Lease, ¶¶ 4, 11).

- 2 -

The Lease also contains the following additional material provisions:

5). All money due under this lease shall be paid or tendered to the Lessor by check at the address set forth above, regardless of changes in ownership in the premises, or in the oil or gas or their constituents, or in the rentals or royalties accruing hereunder until delivery to the Lessee of notice of change of ownership as hereinafter provided.

\*\*\*

12). No change in ownership of the land or assignment of rentals or royalties shall be binding on the Lessee until after Lessee ha[s] been furnished with a written notice thereof and a certified copy of the deed of conveyance or other documents as proof to enable Lessee to identify the land conveyed as being all or part of the leased premises and Lessee shall then apportion all payments hereunder, in the case of any division, according to acreage, [e]xcept for claims arising from Lessee's failure to comply with Lessor's notice, Lessor shall indemnify Lessee from any claim that Lessee improperly paid any rents or royal payable hereunder to Lessor. The privilege of assignment in whole or in part is expressly allowed to Lessor and Lessee.

13). In the event a party (non-defaulting party) consider the other party (defaulting party) has not complied with all its obligations hereunder, both express and implied, the non-defaulting party shall notify the defaulting party in writing setting out specifically in what respects the defaulting party has breached this contract. The defaulting party shall then have thirty (30) days after receipt of said notice within which to meet or commence to meet all or any part of the breaches alleged by the non-defaulting party....

(Lease, ¶¶ 5, 12, 13).

On August 17, 2011, after the Lease had been executed by the parties but before any payments had been made, [AGC] obtained a title report from its counsel stating that [Appellants] did not, in fact, each own a one-sixth interest in an 82.6-acre parcel. Instead, the report indicated that [Appellants] each owned only a two-fifteenths (2/15) interest in the mineral rights underlying a 50-acre parcel. [AGC] forwarded the title report to [Appellants] and [Individual Appellees] on or about August 19, 2011, also notifying them that several curative items would need to be completed. [AGC] obtained a second, "amended" certificate of title on December 1, 2011, which it forwarded to [Appellants] and [Individual Appellees] on December 7, 2011. The original certificate was amended to include certain assignments, but the fractional shares of [Appellants] and [Individual Appellees] and the acreage descriptions from the original remained unchanged.

The amended certificate also included certain additional owners of the mineral rights under the Property, who together were believed to hold approximately one-fifth (1/5) of the mineral estate. Previously, on June 22, 2011, [AGC] had entered into an oil and gas lease with [individuals] who appear to be these same additional individuals ("the Boyer Lease"). The Boyer Lease purports to encumber the same tract that is the subject of [AGC's] lease with [Appellants] and Individual [Appellees]. Despite the ownership and acreage discrepancies in the amended title certificate, it does not appear that either the Lease or the Boyer Lease [was] amended.

Between the time when [Appellants] received the title certificates from [AGC] and the end of 2011, [Appellants] prepared several documents summarizing what they believed to be the correct fractional interest owned by them and [Individual Appellees], including written communications to [AGC], EXCO, and [AGC's] counsel. [Appellants] allege that [AGC] did not act in due diligence prior to executing the Lease, namely, by not inquiring into the actual acreage owned by the named lessors and their correct and respective fractional interests. [Appellants] further allege that, had [AGC] first conducted a title search, it might have discovered that the lessors 1) owned 107 acres of mineral rights, 2) owned 57 acres of mineral rights, or 3) do not own any mineral rights at all. [Appellants] do not

- 4 -

allege a definitive alternative to the conclusions in [AGC's] amended title certificate.

Prior to receiving any payments under the Lease, [Appellant] Betsy Stull notified [AGC] that it should withhold income taxes from her check, but not from [Appellant] Nelson's check. Ultimately, pursuant to paragraph 4 of the Lease, and based on information provided in the title report, [AGC] issued to each [Appellant] a check in the amount of $23,333.33 on December 28, 2011, calculated based on a two-fifteenths (2/15) interest in a 50-acre parcel. On or about December 29, 2011, [AGC] then assigned the working interest in the Lease to EXCO. [Appellants] initially disputed the amount of the checks in correspondence with [AGC] and its counsel. [Appellants] contended that they each were entitled to a payment of one-sixth (1/6) of the total amount of "bonus consideration" to be paid on the original 82.6-acre parcel.

On January 10, 2012, [Appellant] Nelson advised [AGC] that she would return her check because the amount was incorrect, that the Lease expired by its own terms, and that she no longer had any obligations under the lease. [Appellant] Nelson returned the check on February 21, 2012. She later requested that [AGC] advise the IRS that she had not in fact received any rental monies and issue a corrected form 1099. [AGC's] counsel advised that the funds would be held in escrow, but that the income would be reported to the IRS. Despite the initial dispute, however, both [Appellants] ultimately cashed the checks received from [AGC], each indicating on [her] endorsement[] that the amount [she] had received was less than what [she] believed was owed under the Lease. [Appellants] allege that they had no choice but to cash the checks because of the income tax liability incurred from the payments.

[Appellants] filed their first lawsuit on September 18, 2012, at No. 2012-1450-Civil. The [trial court] dismissed the complaint on July 17, 2013, due to [Appellants'] failure to join indispensable parties to the action. [Appellants] then filed their second lawsuit on October 18, 2013, at No. 2013-1372-Civil, in which they brought claims for breach of contract and trespass against [AGC] and EXCO [(Second Complaint)]. EXCO filed preliminary objections to [the Second Complaint] on January 28,

- 5 -

2014. The [trial court] sustained … preliminary objections [in the nature of a demurrer as to Appellants' claims for breach of contract and trespass] and dismissed the entirety of [the Second Complaint] on March 20, 2014. [Appellants] then filed the instant lawsuit, their third, on April 10, 2015 [(Third Complaint)].

Trial Court Opinion, 11/16/2015, at 3-9 (unnecessary capitalization omitted).

EXCO filed preliminary objections to the Third Complaint, which were joined by AGC and Individual Appellees. Those preliminary objections included, *inter alia*, the contention that this action is barred by the doctrine of *res judicata*. On November 16, 2015, the trial court entered an order and opinion sustaining Appellees' preliminary objections in part, holding that this action was indeed barred by the doctrine of *res judicata*. Thus, the trial court dismissed the Third Complaint with prejudice. Appellants timely filed a notice of appeal, and both Appellants and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellants set forth the following issues for our review.

1. Whether the trial court erred in finding that the defense of *res judicata* was properly before the [trial court] during preliminary objections.

2. Whether the trial court erred in applying the merits of *res judicata* to [the Third Complaint].

3. Whether the trial court erred in dismissing [the Third Complaint] due to the [trial court's] interpretation of the doctrine of *res judicata*.

- 6 -

Appellants' Brief at 8 (unnecessary capitalization and suggested answers omitted).

Appellants first argue that because preliminary objections are the procedurally improper method for asserting a substantive defense such as *res judicata*, the trial court should not have considered this issue. Appellants' Brief at 14-16. Thus, Appellants claim that order of the trial court should be reversed on this basis.[2]

"Rule of Civil Procedure 1030 provides that all affirmative defenses, including … *res judicata*, … shall be pleaded in a responsive pleading under the heading new matter.…" **Duquesne Slag Prod. Co. v. Lench**, 415 A.2d

---

[2] Appellees argue, in response, that Appellants have waived any objection in this regard because they did not file preliminary objections to Appellees' preliminary objections. "[W]here a party erroneously asserts substantive defenses in preliminary objections rather than to raise these defenses by answer or in new matter, the failure of the opposing party to file preliminary objections to the defective preliminary objections … waives the procedural defect and allows the trial court to rule on whether the affirmative defense defeats the claim against which the defense has been invoked." **DeMary v. Latrobe Printing & Pub. Co.**, 762 A.2d 758, 762 (Pa. Super. 2000) (internal quotation marks omitted). Here, Appellants raised the issue of Appellees' defective preliminary objection in its brief in response to Appellees' preliminary objections. **See** Brief in Response, 7/16/2015, at 10. Thus, we agree that Appellants have arguably waived the issue of Appellees' procedural error. However, under these circumstances, we decline to find waiver because the trial court considered the underlying issue of whether *res judicata* could be raised by preliminary objection. **See Farinacci v. Beaver Cty. Indus. Dev. Auth.**, 511 A.2d 757 (Pa. 1986) (holding that where preliminary objection to preliminary objection is the proper method for challenging a preliminary objection, raising the issue in a brief will not result in waiver, despite the erroneous procedure, where the trial court considered the underlying issue).

53, 54 (Pa. 1980) (internal citations and quotation marks omitted). However, our courts have recognized an exception to this rule for *res judicata*. "Where … the complaint makes repeated references to the prior … action and contains facts and issues pleaded by the prior action, the affirmative defense of *res judicata* is properly raised by preliminary objections." **Del Turco v. Peoples Home Sav. Ass'n**, 478 A.2d 456, 463 (Pa. Super. 1984). **Cf. MacNeal v. I.C.O.A., Inc.**, 555 A.2d 916 (Pa. Super. 1989) (holding that where the complaint mentions the prior action, but does not plead the same or similar facts or issues pled in the prior action, *res judicata* must be raised by new matter).

Instantly, Appellants argue that the Third Complaint "does not make repeated references to [the Second Complaint]." Appellants' Brief at 15. They suggest that their one reference to "honestly show the procedural history of their arguments with [Appellees]" along with "some facts that are similarly referenced" does not meet the requirements. **Id**.

Our review of the Third Complaint reveals that there can be no doubt that it was formulated on the same facts and issues as set forth in prior actions.[3] The overriding issue in this matter is Appellants' contention that they are entitled to more money under the oil and gas lease with AGC. For example, in sustaining the preliminary objection in the nature of demurrer to

_____

[3] In fact, in its argument on the merits of *res judicata*, Appellants concede that this case deals with identical parties and the same subject matter as the prior suit. **See** Appellants' Brief at 16.

the Second Complaint, the trial court summarized the facts pled in the breach of contract action as follows. "[Appellants] allege in their complaint and now argue in opposition to [Appellees'] preliminary objections that each of them remains entitled to collect one-sixth (1/6) of $3,500.00 per acre for the entire 82.6-acre parcel[, or $48,183.33 each]." Trial Court Opinion, 3/20/2014, at 11. Appellants set forth the same contention in the Third Complaint. **See** Complaint, 4/10/2015, at ¶ 42 ("[Appellants] were each issued checks … for an incorrect amount of $23,333.33 when their contractual portions were $48,183.33 each.").[4]

Moreover, Appellants do not argue they were surprised or prejudiced in any way by litigating *res judicata* as a preliminary objection rather than through a motion for judgment on the pleadings. Accordingly, we conclude that Appellants are not entitled to relief on the basis of Appellees' pleading a substantive defense as a preliminary objection.

We now turn to Appellants' final issues wherein they argue that the trial court erred in granting Appellees' preliminary objection as to *res judicata* on the merits. "[O]ur standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether

---

[4] Appellants' trespass claim was premised on the fact that because the Lease was null and void due to the breach, AGC and EXCO were not allowed to drill on the property. Second Complaint, 10/18/2013, at ¶¶ 47-50. A trespass claim is also included in the Third Complaint, but it merely repeats the claim that AGC and EXCO had breached the Lease. **See** Third Complaint, 4/10/2015, at ¶¶ 76-80.

the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court." *Richmond v. McHale*, 35 A.3d 779, 783 (Pa. Super. 2012).

> *Res judicata*, or claim preclusion, prohibits parties involved in prior, concluded litigation from subsequently asserting claims in a later action that were raised, or could have been raised, in the previous adjudication. The doctrine of *res judicata* developed to shield parties from the burden of re-litigating a claim with the same parties, or a party in privity with an original litigant, and to protect the judiciary from the corresponding inefficiency and confusion that re-litigation of a claim would breed.

*Wilkes ex rel. Mason v. Phoenix Home Life Mut. Ins. Co.*, 902 A.2d 366, 376 (Pa. 2006) (internal citations omitted).

"There must be a concurrence of four conditions in order for [a party] to prevail on [its] *res judicata* claim. The doctrine of *res judicata* applies when there exists an identity of issues, an identity of causes of action, identity of persons and parties to the action, and identity of the quality or capacity of the parties suing or being sued." *Levitt v. Patrick*, 976 A.2d 581, 589 (Pa. Super. 2009). Here, Appellants concede that the first, third, and fourth elements have been satisfied, and limit their argument only to the fact that the causes of action identified in this complaint are different than those presented in the prior complaint. *See* Appellants' Brief at 16. Specifically, Appellants suggest that the facts pled in the instant action prove that Appellees "are, in fact, mistaken as to who owns the subject gas and oil

rights…. [They] present additional evidence that shows that [Appellees] are mistaken and that both title opinions issued to [AGC] are faulty." ***Id***. at 19.

The trial court offered the following.

> In their [prior] complaint, [Appellants] made the very same material allegations that they do in the instant case. [Appellants] alleged that [AGC] failed to pay them according to the fractional interests indicated on the face of the Lease, that the Lease expired on its own terms on December 31, 2011, and that [Appellees] "breached" the Lease by failing to pay the amounts that [Appellants] contend were due. [Appellants] requested in their [prior] action a declaration that the Lease is null and void, damages in excess of $50,000.00, attorneys' fees, and other appropriate relief. They also requested in their trespass claim an injunction preventing [Appellees] from infringing on [Appellants'] mineral rights and damages in an amount "contracted for" in the Lease, plus interest. Although [Appellants'] instant complaint contains more factual allegations, legal argument, and seemingly extraneous material, [Appellants] nevertheless assert the same claims, based on the same Lease, against the same [Appellees], on virtually identical theories. For that reason, we conclude that the entirety of [Appellants'] action is [barred by the doctrine of] *res judicata*.

Trial Court Opinion, 11/16/2015, at 13.

With respect to the purported addition of a claim as to mistake, Appellants do not explain why these facts were not included in their prior complaint. "[R]es judicata will bar subsequent claims that could have been litigated in the prior action, but which actually were not." ***Chada v. Chada***, 756 A.2d 39, 43 (Pa. Super. 2000). As the trial court acknowledged:

> In sum, we find this case to be the clearest of instances where the doctrine of *res judicata* bars the re-litigation of issues that largely were, and certainly could have been, raised and decided in the prior action in [the trial court], before the same judge, involving the same parties, concerning the exact same

subject matter and cause of action. Although [Appellants] previously styled their claims as ones for breach of contract and trespass, their re-casting of them in this lawsuit as ones for "breach of contract/loss of lease/mistake" does not change the fact that the substance of all of the claims already has been adjudicated.

Trial Court Opinion, 11/16/2015, at 16.

Based on the foregoing, we are convinced that Appellants "previously had a full and fair opportunity to pursue the claims [they] now raise[], and although [they] may have failed to do so, the doctrine of *res judicata* bars re-litigation of those claims." **Chada**, 756 A.2d at 44. Thus, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 10/24/2016

- 12 -