J-A31008-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| LYNN J. HANAWAY AND CONNIE HANAWAY, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| SADSBURY ASSOCIATES, LP AND T.R. WHITE, INC., | |
| Appellees | No. 224 EDA 2016 |

Appeal from the Order Entered December 18, 2015
In the Court of Common Pleas of Chester County
Civil Division at No(s):  2014-10911-MJ

BEFORE:  BENDER, P.J.E., MOULTON, J., and FITZGERALD, J.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED JANUARY 26, 2017**

Appellants, Lynn J. Hanaway and Connie Hanaway, appeal from the trial court's December 18, 2015 order reinstating its June 23, 2015 order that granted Appellees', Sadsbury Associates, L.P. and T.R. White, Inc., motion for judgment on the pleadings.  For the following reasons, we affirm.

The trial court summarized the factual background and procedural history of this case as follows:

> [Appellants] initiated this action by filing a Complaint on November 6, 2014.  In response to [Appellees'] Preliminary Objections, [Appellants] filed an Amended Complaint on January 9, 2015[,] and [Appellees] filed their Answer and New Matter on February 4, 2015.  [Appellants] filed their Answer to [Appellees'] New Matter on February 17, 2015.  [Appellees] filed their Motion

---

[*] Former Justice specially assigned to the Superior Court.

for Judgment on the Pleadings on March 17, 2015[,] to which [Appellants] filed their response on April 20, 2015. [Appellees] filed a Reply Brief in Further Support on May 13, 2015. We issued our Order granting [Appellees'] Motion for Judgment on the Pleadings on June 23, 2015. [Appellants] filed their Motion for Reconsideration on July 8, 2015. On July 10, 2015[,] we issued an order granting [Appellants'] Motion for Reconsideration and vacating our June 23, 2015 Order pending further review of [Appellants'] Motion and [Appellees'] response if any. [Appellees] filed their response to [Appellants'] Motion for Reconsideration on July 23, 2015[,] and [Appellants] filed a Reply Brief in Further Support on July 31, 2015. Upon review of [Appellants'] Motion for Reconsideration and the responses thereto, we issued our Order[,] dated December 18, 2015[,] reinstating our Order of June 23, 2015[,] and granting [Appellees'] Motion for Judgment on the Pleadings. [Appellants] timely filed their Notice of Appeal on January 12, 2016.

[Appellants] are the limited partners in [Appellee] Sadsbury Associates, LP…. [Appellee] T.R. White, Inc. (TRW) is the general partner and manager of [Sadsbury]. According to [Appellants], both [Appellees] are essentially controlled by Curtis T. Bedwell, III, Mark Bedwell and T. Randy White (the Bedwell Group). The Amended Complaint requests the dissolution of Sadsbury and the appointment of a "liquidating trustee" due to a conflict between [Appellants] and the Bedwell Group[,] which has resulted in Sadsbury remaining idle and conducting no business despite owning undeveloped real estate and other assets exceeding $1,500,000. According to [Appellants], these actions are depriving them of the value of their interest in Sadsbury.

The crux of [Appellees'] response to [Appellants'] Complaint and the basis for their Motion for [Judgment on the Pleadings] is the doctrine of res judicata. [Appellees] argue that the instant action is barred by [Appellants'] prior action, <u>Lynn Hanaway and Connie Hanaway v. Sadsbury Associates, L.P. et. al.</u>, docket number 2011-01522-RC (Original Action [or "First Action"]). [Appellants] assert that the two actions involve different causes of action and[,] therefore, res judicata does not apply.

In the Original Action, [Appellants] raised claims of: Breach of Contract; Conversion; Breach of Fiduciary Duty; Accounting; Appointment of a Receiver and Liquidation against

the instant [Appellees] as well as others. According to [Appellants], the "gist of the action" in the Original Action was "for a breach of fiduciary duty and conversion of assets as a result of an improper mortgage loan made by the [Appellee] Sadsbury." The instant action [(also referred to herein as the "Second Action")] raises statutory claims pursuant to 15 Pa.C.S.[] § 8572[,] which, according to [Appellants,] were not raised in the Original Action.

Trial Court Opinion (TCO), 3/11/2016, at 1-3 (headings, italics, and original brackets omitted).

Ultimately, the trial court granted Appellees' motion for judgment on the pleadings, concluding that res judicata precluded Appellants from bringing the Second Action because the statutory claims in that case could have, or should have, been brought in the First Action. Appellants timely appealed. In their appeal, they raise two issues for our review:

I. Where [Appellants] filed a previous Complaint against [Appellees] in this proceeding and others on February 11, 2011[,] alleging claims for breach of contract, conversion, breach of fiduciary duty, accounting, appointment of a receiver and alternate equitable relief as the result of a below-market sale of real estate and an improper mortgage loan, both of which were orchestrated to wrongfully deprive [Appellants] of the full monetary value of their investment (the "First Action") and where [Appellants] subsequently filed the instant Complaint against [Appellees] on November 6, 2014 requesting a dissolution of Sadsbury Associates, L.P. ("Sadsbury") pursuant to the equitable statutory remedy set forth at 15 Pa. C.S. Section 8572 (the "Second Action"), did the trial court err in deciding that res judicata applies to bar the Second Action because [Appellants] had raised similar claims in the First Action which they merely relabeled in the subsequent proceeding?

II. Where the Complaint in the First Action was filed nearly four years prior to the Complaint in the Second Action, did the trial judge err in concluding that [Appellants] could

have raised the statutory remedy and requested the statutory relief set forth in the Second Action at the time of the First Action, because they requested similar equitable remedies in both proceedings?

Appellants' Brief at 3.

We apply the following standard of review when evaluating orders granting judgment on the pleadings:

> Entry of judgment on the pleadings is permitted under Pennsylvania Rule of Civil Procedure 1034, which provides that "after the pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for judgment on the pleadings." Pa.R.C.P. 1034(a). A motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law.
>
> Appellate review of an order granting a motion for judgment on the pleadings is plenary. The appellate court will apply the same standard employed by the trial court. A trial court must confine its consideration to the pleadings and relevant documents. The court must accept as true all well pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed, considering only those facts which were specifically admitted.
>
> We will affirm the grant of such a motion only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise.

***Southwestern Energy Production Company v. Forest Resources, LLC***, 83 A.3d 177, 185 (Pa. Super. 2013) (citation omitted).

First, we consider Appellants' argument that "there is no identity of the causes of action set forth in the First Action and the Second Action[,]" and, therefore, res judicata does not apply. Appellants' Brief at 12 (emphasis omitted). Appellants argue that the trial court erred in finding that res

judicata applies because it "merely relie[d] upon the fact that there were similar remedies invoked in both proceedings." *Id.* at 13. Appellants further contend that, even though there are similar remedies invoked in both cases, "[a]n examination of the underlying purpose of each of the causes of action shows that they are clearly separate and distinct legal theories of recovery with different central purposes." *Id.* We disagree.

It is well-established that "[w]here there has previously been rendered a final judgment on the merits by a court of competent jurisdiction, the doctrine of res judicata will bar any future suit on the same cause of action between the parties." *Chada v. Chada*, 756 A.2d 39, 42 (Pa. Super. 2000) (citation omitted). "Invocation of the doctrine of res judicata (claim preclusion) requires that both the former and latter suits possess the following common elements: 1. identity in the thing sued upon; 2. identity in the cause of action; 3. identity of persons and parties to the action; and 4. identity of the capacity of the parties suing or being sued." *Id.* (formatting and citation omitted). Particularly important to the matter at hand, "res judicata will bar subsequent claims that **could have been** litigated in the prior action, but which actually were not…." *Id.* at 43 (citation omitted; emphasis added). Put differently, "res judicata applies to issues that were, in effect, waived in the old proceeding." *Merkel v. W.C.A.B. (Hofmann Industries)*, 918 A.2d 190, 193 n.5 (Pa. Cmwlth. 2007) (italics omitted). A party "cannot sit out one cause of action and then force the opposing party into another action over an issue that both could and should have been

raised in the first place." ***Stuart v. Decision One Mortgage Company, LLC***, 975 A.2d 1151, 1154 (Pa. Super. 2009) (citation omitted).

Here, Appellants concede that "[t]here is no dispute in this appeal as to the criteria calling into play the doctrine of res judicata except for one issue, the identity of the causes of action." Appellants' Brief at 13. Appellants maintain that the First Action contained "claims at law and in tort for the improper below market sale of real estate … and for an improper mortgage loan made by Sadsbury to finance this sale. The central theory behind the [F]irst [A]ction was to recover monetary damages suffered by [Appellants] in their capacity as aggrieved investors." ***Id.*** at 11. According to Appellants, as an "ancillary request to their claims for monetary damages" in the First Action, they requested the appointment of a receiver and the dissolution of Sadsbury so that Sadsbury would not "transfer additional funds or real estate in an attempt to deprive [Appellants] of [the] value of these assets…." ***Id.*** at 16. In contrast, they say the Second Action "centers upon the issue of whether Sadsbury is currently able to conduct its business operations[,]" ***id.*** at 11, and "whether or not the business purposes for which Sadsbury was organized pursuant to the terms of the [Limited Partnership Agreement] were still feasible." ***Id.*** at 16. As a result, in this Second Action, Appellants similarly seek the appointment of a receiver and liquidation of Sadsbury. ***See id***. at 11, 17-18.

In spite of Appellants' attempts to distinguish the causes of action at issue, it is clear to us that the doctrine of res judicata precludes the Second

Action. We have previously explained that "[i]dentity of two causes of action may be determined by considering the similarity in the acts complained of and the demand for recovery as well as the identity of the witnesses, documents and facts alleged." ***Dempsey v. Cessna Aircraft Company***, 653 A.2d 679, 681 (Pa. Super. 1995) (citations omitted). ***See also In re Jones & Laughlin Steel Corporation***, 477 A.2d 527, 531 (Pa. Super. 1984) ("As to the identity of cause of action, rather than resting on the specific legal theory invoked, res judicata generally is thought to turn on the essential similarity of the underlying events giving rise to various legal claims.") (italics omitted). Here — aside from the similar relief requested — similar facts, evidence, and events underlie each case.

As discussed *supra*, in the First Action, Appellants sought to recover monetary damages — which they claim to have suffered due to alleged misconduct by Appellees — ***and*** they requested the appointment of a receiver and the liquidation of Sadsbury. Appellants' Brief at 11, 15-16. Appellants purportedly "sought the appointment of a receiver in the First Action … to prevent the possibility of further impropriety[,]" ***see id.*** at 16, and Appellants' counsel recognized the distrust that existed between the partners.[1] In August 2014, Appellants' requests for equitable

---

[1] ***See*** Appellants' Reply Brief at 3 (acknowledging that there were "passing references by counsel (who was not testifying) to the distrust which existed between the partners…"); Appellees' Brief at 4 (noting that Appellants' trial counsel in the First Action argued, in support of the appointment of a
*(Footnote Continued Next Page)*

relief were denied because the court in the First Action determined that there was no basis for awarding such relief after Appellants' other claims had been dismissed.[2]

Just months after the trial judge denied their requests, Appellants filed this lawsuit on November 6, 2014, once again seeking the appointment of a receiver and liquidation, only this time based on 15 Pa.C.S. § 8572. That statute states that "[o]n application by or for a partner, the court may order dissolution of a limited partnership whenever it is not reasonably practicable to carry on the business in conformity with the partnership agreement." 15 Pa.C.S. § 8572. Appellants claim that the core purpose of the Second Action is "vastly different" from the prior proceeding because it regards the "dissolution of Sadsbury as a result of the inability of the partners to carry

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯

receiver and the liquidation of Sadsbury, that "[t]hese people don't trust each other. They can't continue anymore as partners.") (emphasis and citations to record omitted).

[2] **See** TCO at 3 (noting that Appellants' requests for equitable relief in the First Action were "remedies and not causes of action as [pled]"); Appellants' Brief at 7, n.2 (explaining that the trial court in the First Action dismissed Appellants' claims for breach of contract, conversion, and breach of fiduciary duty); Appellees' Brief at 4-5 (noting that in August 2014, the trial court "rejected [Appellants'] request to appoint a receiver or to liquidate Sadsbury" because it determined that both of these requests for relief were remedies "in aid of some recognized, presently existing, legal right"); **see also The Northampton National Bank of Easton v. Piscanio**, 379 A.2d 870, 872 (Pa. 1977) ("Receivers are appointed only in aid of some recognized, presently existing, legal right, and will not be appointed where receivership is the sole relief asked. Such action is to be ancillary only, permitted only in or in connection with a pending action.") (citations omitted).

on the business purposes for which it was organized[.]"  Appellants' Brief at 16, 20.  Appellants list several "additional facts and circumstances" to demonstrate that, since the First Action, their business relationship with the Bedwell Group has "further soured."[3]  *Id.* at 17.  "In essence," they claim, "Sadsbury has sat dormant for all of this time, paralyzed as a result of the bad blood existing between [Appellants] and the Bedwell Group."  *Id.* However, these same basic facts existed at the time of the First Action; by that time, a "serious falling out" between the partners had already occurred and the partnership had already been inactive for several years.  *See infra*.

Accordingly, we are not persuaded by Appellants' attempts to separate and distinguish the causes of action at issue.  The First and Second Actions are sufficiently similar in terms of the acts complained of and the relief

---

[3] Appellants assert that, about or after the time they filed the First Action, "[t]here were issues regarding the extinguishment of an easement serving Ms. Hanaway's quarry and the lawsuit wrongfully instituted by the Bedwell Group to collect equipment rental monies.  There were issues involving the transfer of ground by Octorara Partners."  Appellants' Brief at 17.  We note that Appellants raised the issue regarding the easement in the First Action, and did not raise the issue about the transfer of ground by Octarara Partners in their complaint in this case.  *See* Appellees' Brief at 11-12 (citing record evidence to show that, in the First Action, Appellants "argued before, during, and after trial that T.R. White and the Bedwell Group had engaged in bad faith conduct by terminating an express easement over a portion of the grounds of the Subdivision which benefitted [Appellants'] adjoining quarry") (quotation marks and original brackets omitted); *see also id.* at 13 (noting that "[Appellants] alleged no facts about Octorara Partners in either of their complaints in this case….  [Appellants] first raised the issue in their Motion for Reconsideration, despite being aware of it years before filing their Complaint in this case").  In their Reply Brief, Appellants do not specifically dispute these claims.

sought. Thus, we cannot conclude that the trial court erred when it determined that Appellants simply relabeled their averments as statutory claims. *See* TCO at 3. In the future, however, if new, meaningful facts to support dissolution would emerge, such as to create a distinct cause of action, res judicata would not bar an action by Appellants. *See Chada*, 756 A.2d at 43-44 ("When the cause of action in the first and second actions are distinct, or, even though related, are not so closely related that matters essential to recovery in the second action have been determined in the first action, the doctrine of res judicata does not apply.") (citation omitted).

Second, we address whether the "trial judge erred in concluding that [Appellants] could have raised the statutory claims now at issue in the First Action." Appellants' Brief at 21 (unnecessary capitalization and emphasis omitted). The trial court discerned that Appellants' statutory claim **could have, and should have**, been raised in the First Action. TCO at 3; *see also Chada*, 756 A.2d at 42. It determined that it was specious for Appellants to argue that, at the time of the First Action, they "were not fully aware that Sadsbury was no longer able to carry on the business purposes for which it was formed" as they clearly "were aware enough at the time to request a receiver and liquidation." TCO at 3. Once again, we agree.[4]

---

[4] Appellants additionally argue that "it is not incumbent upon a [p]laintiff in a prior proceeding to join additional equitable causes against the same parties in that proceeding or else suffer the waiver of those claims." Appellants' Brief at 22. They claim that "[t]he proceeding in the Second
*(Footnote Continued Next Page)*

Although Appellants claim that other events have occurred since the First Action to worsen their relationship with the Bedwell Group, the "serious falling out" between the partners — which marked the deterioration of their relationship and spurred the First Action — occurred *in 2007*. Appellants' Brief at 6. In fact, Appellants' counsel advanced arguments in the First Action regarding the partners' distrust toward one another to support the liquidation of the partnership. *See* note 1, *supra.* Further, Appellants assert that Sadsbury ***"has done nothing to further the business of the Partnership since the approximate time that [Appellants] had the dispute with the Bedwell Group in 2007...."*** Appellants' Brief at 9 (emphasis added). Given what Appellants knew at the time they filed the First Action — namely the animosity affecting the partnership and the resulting inaction — they could have, and should have, litigated their case for judicial dissolution pursuant to 15 Pa.C.S. § 8572 at the time. *See* ***Chada***, 756 A.2d at 44 (concluding that where the appellant "previously had a full and fair opportunity to pursue the claims he now raises, and although he may have failed to do so, the doctrine of res judicata bars re-litigation of

_(Footnote Continued)_ ――――――――――――

Action is equitable in nature[,]" and our Pennsylvania Rules of Procedure "were not intended to preclude the assertion of a subsequent equity claim." ***Id.*** at 23. However, as Appellees point out, "Pennsylvania law applies the doctrine of claim preclusion to equitable claims brought in a later suit just as it does to claims at law." Appellees' Brief at 22 (citing various cases barring a subsequent claim in equity); ***see, e.g.***, ***Chada***, 756 A.2d at 41 (applying res judicata to bar subsequent action in equity, requesting that the court declare a constructive trust on certain property).

those claims"). To allow litigation of Appellants' statutory claim now would unfairly permit them to have a second bite at the apple. Therefore, we conclude that the trial court did not err in determining that res judicata barred Appellants' claims.

Order affirmed.

Judge Moulton joins this memorandum.

Justice Fitzgerald notes his dissent.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/26/2017

- 12 -