**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3377
_____

LEI KE,
                    Appellant

v.

DREXEL UNIVERSITY; JOHN FRY;
RICHARD HOMAN; SAMUEL PARRISH;
AMY FUCHS; JENNIFER HAMILTON;
ANTHONY SAHAR

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-11-cv-06708)
District Judge:  Honorable Joel H. Slomsky

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 16, 2016
Before:  FUENTES, VANASKIE and SCIRICA, Circuit Judges

(Opinion filed: March 22, 2016)
_____

OPINION[*]
_____

PER CURIAM

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Lei Ke appeals from an order of the United States District Court for the Eastern District of Pennsylvania, which denied his summary judgment motion and granted the Defendants' cross-motion for summary judgment. We will affirm the District Court's judgment.

Writing primarily for the parties who are familiar with the extensive record in this case, we review only those facts that are especially pertinent to our analysis. Ke, who was a medical student at Drexel University College of Medicine ("DUCOM"), was dismissed from DUCOM after his second year for poor academic performance,[1] but was conditionally readmitted on appeal to the Dean. One of the readmission conditions was that "[a]ny grade below Satisfactory will be considered grounds for dismissal from the College of Medicine." When Ke retook the four classes he had failed during his second year, he received an "MU" in one of them. Nevertheless, he was not dismissed, but was allowed to remediate the grade by passing the National Board of Medical Examiners ("NBME") Microbiology Subject Exam.[2]

Ke then began a Family Medicine internship with a practice owned by Dr. Anthony Sahar. Ke ultimately received a "U" for the clerkship. DUCOM's Clinical Promotions Committee met to determine whether the "U" constituted grounds to dismiss Ke. The Committee decided that because Ke had received positive mid-rotation feedback

_____

[1] Ke received one "Marginal Unsatisfactory" ("MU"), and one "Unsatisfactory" ("U") during his first year, and four "U"s in his second year.

[2] These required subject matter exams are referred to as "shelf exams."

2

from another doctor at Sahar's practice, leniency was warranted. The Committee allowed Ke to remain enrolled, but stipulated that his remaining clerkships would be in the Philadelphia area to allow closer supervision, that he would be required to repeat the Family Medicine Clerkship, and that "[t]he receipt of any additional grade of less than Satisfactory (including Unsatisfactory or Marginal Unsatisfactory) will be considered grounds for dismissal from the College of Medicine."

Ke then began an OB/GYN clinical rotation. He passed the clinical portion of the rotation, but failed the NBME shelf exam and thus received an "MU" for the clerkship. The Promotions Committee voted to dismiss Ke, and his appeals were unsuccessful.

Ke filed a complaint in the District Court against Drexel University and several individual defendants, raising a number of causes of action, based on his belief that he was dismissed from DUCOM because of his race or ethnicity (Ke is Chinese). Following discovery and protracted litigation, including motions to amend the complaint and a motion to dismiss the complaint in part, seven claims remained at the time of summary judgment:

> (1) Count I—Intentional Discrimination in violation of 42 U.S.C. § 1981 against all Defendants; (2) Count II—Willful Retaliation in violation of 42 U.S.C. § 1981 against all Defendants; (3) Count III—Hostile Educational Environment in violation of 42 U.S.C. § 1981 against Sahar, Parrish, and Drexel University; (4) Count IV—Intentional Discrimination in violation of Title VI of the Civil Rights Act, 42 U.S.C. § 2000d, against Drexel University; (5) Count V—Willful Retaliation in violation of Title VI of the Civil Rights Act, 42 U.S.C. § 2000d against Drexel University;[3] (6) Count

---

[3] Counts IV and V were brought only against Drexel, which receives federal funding.

VI—Conspiracy in violation of 42 U.S.C. § 1985 against Sahar, Parrish, and Hamilton; and (7) Count VII—Racially Motivated Breach of Contract in violation of 42 U.S.C. § 1981(b) against all Defendants.

Dist. Ct. Mem., Dkt. #683 at 16-17. The District Court denied Ke's Motion for Summary Judgment as to all seven counts, and granted the Defendants' Cross-Motion for Summary Judgment as to all counts. Ke appealed.

## I.     Scope of Appeal and Standard of Review

Ke's notice of appeal references only the District Court's summary judgment order, but two weeks after his opening brief was filed, he filed a "Motion to Appeal the District Court's Prior Orders." As Appellees note in response to the motion, Federal Rule of Appellate Procedure 3(c) requires an Appellant to "designate the judgment, order, or part thereof being appealed." In his reply, Ke correctly counters that this Court has "a policy of liberal construction of notices of appeal," particularly where the Appellant is proceeding pro se. Nationwide Mut. Ins. Co. v. Cosenza, 258 F.3d 197, 202 n.1 (3d Cir. 2001); see also Gov't of the Virgin Islands v. Mills, 634 F.3d 746, 751 (3d Cir. 2011). But Ke also correctly cites United States v. Pelullo, 399 F.3d 197, 222 (3d Cir. 2015), for the proposition that an argument not raised in an opening brief is waived. See also Bailey v. United Airlines, 279 F.3d 194, 204 (3d Cir. 2002) (issue is waived on appeal when

See 42 U.S.C. § 2000d ("No person in the United States shall on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.").

identified in the statement of issues but not argued in the brief).[4]  Even if we were to

construe Ke's notice of appeal as challenging the District Court's prior orders, since he

did not challenge those orders in his opening brief, we will not address them any further.[5]

We review the District Court's order granting summary judgment de novo and

review the facts in the light most favorable to the nonmoving party.  See Burns v. Pa.

Dep't of Corr., 642 F.3d 163, 170 (3d Cir. 2011).  We will affirm summary judgment if

"there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law."  Fed. R. Civ. P. 56(a).

## II.    The Merits

### A.    Section 1981 and Title VI Claims

We agree with the District Court's thorough analysis of these claims.  Ke has not

raised a genuine issue of material fact with respect to intentional discrimination.[6]  While

---

[4] Ke argues that he mentioned the prior orders in his "Concise Summary of the Case," which he indicates he filed pursuant to 3d Cir. LAR 33.3.  That Rule does not apply to pro se cases, but in any event, Ke has waived review of the prior orders by not discussing them in his opening brief.

[5] We have considered whether "extraordinary circumstances" warrant our review of the earlier orders, despite the waiver.  See United States v. Albertson, 645 F.3d 191, 195 (3d Cir. 2011).  We do not find any such circumstances here, and we find that Ke's attempt to raise the issues by way of motion is an attempt to circumvent the Clerk's order that his brief not exceed 16,500 words.  Ke's "Motion to Appeal the District Court's Prior Orders" is thus denied.  We note, in any event, that we find no reversible error in the District Court's prior orders.

[6] Ke's statement that Defendants expressed in the District Court that "Caucasian [students] are smarter than minority students" is frivolous and fallacious.  What Defendants said was that they "**do not** contend that Caucasians are smarter than minority

it is undisputed that Ke belongs to a racial minority, no direct or indirect evidence suggests that he was dismissed from DUCOM because of his race. The *only* evidence that could be construed as evincing racial animus are comments that were allegedly made by Dr. Sahar during Ke's clinical rotation.[7] But Dr. Sahar was not involved in making the decision to dismiss Ke, and the "U" that Dr. Sahar gave Ke for his clerkship was not a factor in Ke's dismissal. See Dkt. #634-17 (Exh. M); 634-19 (Exh. O). See Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992) ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision.").

We have "recognized that individuals who violate the law based on discriminatory motives sometimes do not leave a trail of direct evidence, but instead 'cover their tracks' by providing alternate explanations for their actions, [and] we have [thus] found that a plaintiff may establish a prima facie factual foundation of discrimination by drawing reasonable inferences from certain objective facts that are generally not in dispute." Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 275 (3d Cir. 2014), cert. denied sub

---

students." Dkt. #647-1 at 14, ¶ 39 (emphasis added).

[7] Dr. Sahar allegedly pressed Ke to determine where he was from, and when he learned that Ke was from Communist China, he said he did not like Communist China. He also allegedly asked Ke if he ate American food or "gook food," and stated that Ke was "very big and tall for a Chinaman." Ke was not able to depose Dr. Sahar, as he was sick with cancer, and later died while the complaint was pending.

nom. Allston v. Lower Merion Sch. Dist., 135 S. Ct. 1738 (2015). The District Court painstakingly examined all of the evidence regarding students who received "U"s or "MU"s, who did not pass shelf exams or clinical rotations, and who were allegedly treated more favorably than Ke. The District Court, examining "all of the surrounding facts and circumstances," see id. at 276, found no evidence that would lead to an inference that Ke was dismissed because of his race. See Dkt. #683 at 33-54. After examining the record, we similarly find no such evidence.

B.    Racially-motivated Breach of Contract

As noted, we agree with the District Court that the record presents no evidence, direct or circumstantial, of discrimination. Thus, Ke's claims of a "racially-motivated breach of contract," and his claim that he endured a hostile education environment must fail. As for the contract claim, Ke argues that the Student Handbook allowed him to remediate a grade of "MU," and thus he should not have been dismissed for the "MU" in his OB/GYN clerkship. But Ke's contract with DUCOM had been modified by the conditions imposed by the Dean on his initial re-enrollment, and the conditions imposed by the Promotion Committee after receiving a "U" in the Family Medicine clinical. Ke accepted those conditions each time by re-enrolling or continuing his enrollment in DUCOM. Thus, Ke was subject to the more stringent condition that an "MU" was sufficient for his dismissal. And we do not find any evidence in the record that racial animus, either direct or circumstantial, motivated the imposition of those conditions.

7

As for the hostile environment claim, we agree with the District Court that most of the comments Ke referenced do not in any way suggest a discriminatory motive.[8]  And the comments by Dr. Sahar, see supra note 7, were limited in scope, and were not "sufficiently severe or pervasive to alter the conditions [of the clerkship] and create an abusive working environment."  See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (analyzing a hostile work environment in the Title VII context).[9]

C.      Retaliation Claim

We agree with the District Court that Ke's retaliation claims under Title VI and § 1981 fail because he did not allege that he engaged in protected activity.  In other words, Ke does not claim that he was retaliated against because he complained of racial discrimination.  See Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 183 (2005) (holding in Title IX context that "retaliation against individuals because they complain of sex discrimination is intentional conduct that violates the clear terms of the statute" (quotation marks omitted)).  While protected activity "includes not only an employee's filing of formal charges of discrimination against an employer but also informal protests of discriminatory employment practices, including making complaints to management," see Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 193 (3d Cir. 2015) (quotation marks

---

[8] For example, Ke complains that he was labeled as "awkward and immature," "the weirdest guy I've ever met," and "introverted."  None of these phrases implies racial animus.

[9] We further note that Dr. Sahar was not present for much of the clerkship.

8

omitted), Ke pointed to no record evidence (aside from his own statements in his memorandum in support of his summary judgment motion) that would indicate that he complained to anyone at Drexel about racial discrimination. See Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 218 (3d Cir. 2015) (party opposing summary judgment "must point to specific factual evidence showing that there is a genuine dispute on a material issue requiring resolution at trial"). We thus need not discuss whether Ke met the other requirements of a prima facie case of retaliation. See Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006) (setting forth elements of retaliation claim in Title VII context).

D.      Conspiracy Under 42 U.S.C. § 1985(3)

"[B]ecause § 1985(3) requires the intent to deprive of equal protection, or equal privileges and immunities, a claimant must allege some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action in order to state a claim." Farber v. City of Paterson, 440 F.3d 131, 135 (3d Cir. 2006). As we have noted above, there simply is no record evidence here of discriminatory animus.[10] Thus, Ke's conspiracy claim fails.[11]

---

[10] Ke argues for the first time on appeal that his right to interstate travel was restricted. As Appellees correctly note, we generally do not address arguments that were not raised in the District Court. See Ziccardi v. City of Philadelphia, 288 F.3d 57, 65 (3d Cir. 2002). And we agree with Appellees, in any event, that the requirement that Ke complete his clerkships in Philadelphia did not in any unconstitutional way restrict his right to travel.

[11] Ke's motion to expand the record is denied. Although we may, in limited

For the foregoing reasons, we will affirm the District Court's judgment.[12]

circumstances, have the equitable power to allow a party to supplement the record on appeal, see In re Capital Cities/ABC, Inc.'s Application for Access to Sealed Transcripts, 913 F.2d 89, 96 (3d Cir. 1990), equity would not support supplementing the record here, as Ke has not explained his failure to introduce the documents in the District Court. Further, because Ke has failed to show racial animus, the three pages, which relate to Ke's argument regarding whether the actors could form a conspiracy, do not impact our decision in any way.

[12] Ke's motion to disqualify Judge Slomsky is denied as moot. We commend Judge Slomsky for his patience and diligence in guiding this case to resolution. Appellees' cross-motion for sanctions and Ke's cross-motion for sanctions are denied.