J-S53016-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| LEI KE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DREXEL UNIVERSITY | : | No. 95 EDA 2018 |

Appeal from the Order Entered December 19, 2017
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  June Term 2013 No. 03506

BEFORE:   GANTMAN, P.J., OTT, J., and PLATT*, J.

MEMORANDUM BY OTT, J.:                          **FILED NOVEMBER 26, 2018**

Lei Ke appeals, *pro se*, from four orders, made final by the order entered December 19, 2017, in the Philadelphia County Court of Common Pleas, granting the motion for summary judgment filed by Drexel University and dismissing Ke's case against Drexel.  Ke sued Drexel for, *inter alia*, breach of contract, a violation of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"),[1] and concerted tortious conduct after he was dismissed from the College of Medicine in April of 2011.  Ke lists ten issues in his brief, challenging the order granting summary judgment based on *res judicata* and/or collateral estoppel, the denial of his motion for partial summary judgment, the denial of his motion to strike Drexel's summary judgment

_____

* Retired Senior Judge assigned to the Superior Court.

[1] 73 P.S. § 201-1 *et seq*.

motion, and the denial of his motion for clarification concerning the court's refusal to allow him to amend his complaint to add individual defendants. For the reasons below, we affirm.

The facts underlying Ke's complaint are summarized by the trial court as follows:

> [Ke] was admitted to Drexel University College of Medicine ["DUCOM"] on January 25, 2007 and he started his studies in August 2007. During his First Academic Year, [Ke] received a "Marginal Unsatisfactory" grade in Behavioral Science and an "Unsatisfactory" grade in Immunology, both of which required remediation over the summer.
>
> In his Second Academic Year from September 2008 to May 2009, [Ke] received "Unsatisfactory" grades in all four major Year 2 courses: Introduction to Clinical Medicine, Medical Microbiology, Pathology and Laboratory Medicine and Medical Pharmacology.
>
> According to the 2009 DUCOM Student Handbook, students who receive three or more grades of Unsatisfactory or Marginal Unsatisfactory in an Academic Year may be dismissed from DUCOM.
>
> The Pre-clinical Promotions Committee of DUCOM met with [Ke] on May 11, 2009 and decided that [he] should be dismissed from the School of Medicine. [Ke] appealed his dismissal to the Dean of DUCOM, Richard Homan, M.D., who reversed the decision of the Pre-Clinical Promotions Committee and reinstated [Ke] under a number of conditions. Two of those conditions were that the receipt of a grade below "Satisfactory" in repeating his Second Academic Year, or a grade below "Satisfactory" during his clinical training would be considered grounds for dismissal from DUCOM.
>
> During the next Academic Year (2009-2010), [Ke] repeated the four major Second Year courses that he had previously failed, and received a "Marginal Unsatisfactory" grade while retaking Microbiology. While the grade of "Marginal Unsatisfactory" violated the terms of reinstatement as set forth by Dean Homan in his letter of July 21, 2009, the Pre-Clinical Promotions Committee granted leniency and did not dismiss [Ke]. Rather, he was granted permission to study for and sit for the National Board

of Medical Examiners ["NBME"] Shelf exam to remediate his "Marginal Unsatisfactory" grade in Microbiology, which he passed, resulting in a change of his grade in Microbiology to "Satisfactory."

Another academic requirement of DUCOM is that students are required to pass the United States Medical Licensing Step 1 exam within 18 months of completing their Second Academic Year. [Ke] took the Step 1 exam on September 27, 2010 which meant that he had almost five months of time to study for that exam after completing the Second Academic Year. Around that same time, [Ke] also started a Family Medicine clerkship in the practice of Anthony Sahar, M.D., on September 28, 2010. This clerkship ended on November 3, 2010, and the Shelf exam for Family Medicine was scheduled for November 5, 2010.

At some time between October 10 and October 20, 2010, [Ke] learned that he had failed the Step 1 exam. During the last week of the Family Medicine clerkship, he decided to defer taking the Family Medicine Shelf exam until December 29, 2010 and scheduled himself to take the Step 1 examination again on December 27, 2010, which was cancelled due to a snow storm. [Ke] could not start another clerkship until he took the Step 1 exam again. He subsequently took the Step 1 exam on February 10, 2011, but he again failed that exam.

Additionally, [Ke] received a failing grade for the clinical portion [of the] Family Medicine clerkship. He also failed the Family Medicine shelf exam, receiving a grade in the lowest 1% of students nationally. Lastly, he received an "Unsatisfactory" grade for the Family Medicine clerkship with Dr. Sahar.

Despite [Ke] having failed the Family Medicine clerkship, and, therefore, failed to comply with the conditions of his reinstatement at DUCOM by Dean Homan, the Clinical Promotions Committee decided that since he had received a favorable mid-clerkship evaluation, there were some ambiguities concerning communication to [Ke] and he was allowed to continue at DUCOM with the requirement being that he would repeat the Family Medicine clerkship, that he would serve the remainder of his clerkships in Philadelphia under the supervision of DUCOM active faculty members, and that the receipt of any grade below "Satisfactory" in the future would be grounds for his dismissal from the program. [Ke] agreed to all of these terms and conditions as part of his continued medical education.

Thereafter, [Ke] completed a clerkship in Ob/Gyn. Though he passed the clinical portion of the clerkship, he took the NBME Shelf exam in Obstetrics and Gynecology on March 25, 2011 and failed that examination, receiving a score that placed him below the 1st percentile (bottom 1%) nationally.

Since [Ke's] failure of the Obstetrics and Gynecology Shelf exam resulted in his receipt of a grade of "Marginal Unsatisfactory", the Clinical Promotion Committee met on April 8, 2011 and voted to dismiss [Ke] based on his overall poor academic performance. He appealed this dismissal to the Clinical Promotions Committee which denied his appeal. He subsequently appealed to Dean Homan who also denied his appeal.

Trial Court Opinion, 4/13/2018, at 2-5.

Thereafter, proceeding at all times *pro se*, Ke embarked on a legal campaign seeking both his reinstatement as a third year medical student, as well as compensatory and punitive damages.[2] On November 18, 2011, Ke filed suit in the United States District Court for the Eastern District of Pennsylvania, naming Drexel and six individuals as defendants ("the federal action"). His final amended complaint, filed on July 30, 2013, included allegations of intentional racial discrimination and retaliation under both Title VI of the Civil Rights Act and 42 Pa.C.S. § 1981, a hostile educational environment pursuant to Section 1981, violations of the Family Education Rights and Privacy Act and the Pennsylvania Fair Education Opportunities Act, conspiracy under 42 Pa.C.S. § 1985, intentional infliction of pain and suffering, and breach of contract under Pennsylvania law. ***See*** Motion for Summary

---

[2] For the sake of brevity, we highlight only the key filings and rulings. We note, however, Ke has moved for reconsideration, appealed, or attempted to appeal nearly every ruling by every court in this matter.

Judgment, 10/25/2017, Exhibit D (Complaint, Civil Action 11-6708, E.D. Pa). Later, Ke was granted permission to add a claim for racially motivated breach of contract pursuant to Section 1981, and discontinue his count for breach of contract under Pennsylvania law. **See id.**, Exhibits E (Order 12/6/2013, Civil Action 11-6708), and G (Order 4/1/2014, Civil Action 11-6708).

While the federal case was pending, on June 23, 2013, Ke initated the present action in the Philadelphia County Court of Common Pleas by filing a writ of summons and naming only Drexel as defendant. However, in the caption of subsequent motions, as well as his complaint, and without leave of court, Ke named 12 additional, individual defendants. The trial court first noted this anomaly in an order entered December 23, 2013, which denied Ke's motion for pre-complaint discovery. In a footnote, the court stated, "The only defendant in this action is Drexel University. [Ke's] insertion of various individuals in the captions on his later filings is improper and of no effect." Order, 12/23/2013. Nevertheless, Ke filed an amended complaint on January 26, 2014, naming Drexel and 12 individuals as defendants, and including counts for breach of contract, violations of the UTPCPL, retaliation, civil conspiracy, concerted tortious conduct, violation of certain constitutional rights, and negligent infliction of emotional distress. **See** Amended Complaint, 1/26/2014. On February 18, 2014, Drexel filed preliminary objections to the amended complaint. By order entered March 31, 2014, the trial court sustained in part and overruled in part Drexel's preliminary objections.

Relevant to the issues herein, the court first explained the only proper defendant was Drexel:

> The docket does not indicate that [Ke] served any of the defendants with original process as required by Pa.R.C.P. 400 et seq. Drexel waived any defects to service *on Drexel* by having its attorneys enter an appearance on its behalf and by filing preliminary objections which did not raise any issues regarding service *on Drexel*. The attorneys for Drexel entered their appearance on behalf of Drexel University *only*. They filed these preliminary objections on behalf of Drexel University *only*. The individual defendants are not represented *in this case* by Drexel's attorney and neither Drexel nor its attorneys may act for them. Without proper service or original process or a waiver thereof, the individual defendants have not been made parties to this action.

Order 3/31/2014, at 1 n.1 (emphasis in original). The trial court overruled Drexel's preliminary objections based upon the pending federal action, but sustained its objections to several counts in the complaint. *See id.* Accordingly, the only surviving claims against Drexel were for breach of contract, a violation of the UTPCPL, and concerted tortious conduct.[3] On April 7, 2014, the trial court entered an order staying the matter until the resolution of the federal action.[4]

_____

[3] We note that on January 29, 2014, Ke filed a motion to join additional defendants. However, he identified only one by name. Thereafter, on April 3, 2014, the trial court entered an order denying the motion without prejudice, so that Ke could file a proper motion to amend. *See* Order, 4/3/2014 at n.1. The court stated: "The motion must show that the amendment would not be futile or be barred by the statute of limitations." *Id.*

[4] Ke subsequently filed motions for reconsideration and clarification, and sought to amend the stay order for a determination of finality so that he could appeal it. Although all of his motions were denied, Ke still filed an appeal from the April 7, 2014, order, which this Court ultimately quashed. *See* Docket No. 1279 EDA 2014.

On September 4, 2015, the federal district court granted summary judgment in favor of all the defendants in the federal action. Ke appealed to the Third Circuit, which affirmed on March 22, 2016, and the United States Supreme Court denied his petition for *certiorari* on October 31, 2016. ***See Ke v. Drexel University***, 645 Fed.Appx. 161 (3d Cir. 2016), *cert. denied*, 137 S.Ct. 384 (U.S. 2016). With regard to Ke's claim based upon a "racially motivated breach of contract," the Third Circuit first determined "the record presents no evidence, direct or circumstantial, of discrimination." ***Id.*** at 165. The court also opined Ke's contract claim was similarly meritless, explaining:

> Ke argues that the Student Handbook allowed him to remediate a grade of "MU," and thus he should not have been dismissed for the "MU" in his OB/GYN clerkship. But Ke's contract with [Drexel] had been modified by the conditions imposed by the Dean on his initial re-enrollment, and the conditions imposed by the Promotion Committee after receiving a "U" in the Family Medicine clinical. Ke accepted those conditions each time by re-enrolling or continuing his enrollment in [Drexel]. Thus, Ke was subject to the more stringent condition that an "MU" was sufficient for his dismissal.

***Id.***

Meanwhile, on November 4, 2015, the stay was lifted in the present case. On November 9, 2015, Ke, once again, filed a motion to amend his complaint in order to add the individual defendants. The trial court denied the motion on December 16, 2015. While simultaneously attempting to appeal the court's ruling,[5] Ke initiated a second civil action in Philadelphia County by

---

[5] Ultimately, on February 29, 2016, this Court entered an order denying Ke's petition for review of the December 16, 2015, Order.

writ of summons filed on January 6, 2016 ("second state action"). On March 9, 2016, Ke filed a complaint in the second state action, alleging violations of the UTPCPL by the same individual defendants he sought to add to the present action.[6] On August 10, 2016, the trial court in the second state action granted the defendants' preliminary objections and dismissed the complaint. Ke appealed to this Court, which affirmed on June 15, 2017, in an unpublished decision. **See Ke v. Fry**, 174 A.3d 75 (Pa. Super. 2017) (unpublished memorandum). Specifically, the panel concluded Ke's claims were barred by the doctrine of collateral estoppel, opining:

> [Ke] first raised his breach of contract claim in the United States District Court for the Eastern District of Pennsylvania, asserting that his dismissal from Drexel Medicine was a racially motivated breach of contract. The contract at issue was the 2006 Student Handbook. The court rejected [Ke's] claim, granting [Drexel] summary judgment.
>
> * * * *
>
> Despite the fact that [Ke] is now presenting his claim as a violation of the UTPCPL, the underlying issue is the same. In the instant case [Ke] asserts that "his single MU grade in his repeat second year would not warrant his expulsion under the 2006 Student Handbook." [Ke's] Reply Brief at 3. Thus, his underlying claim here is that he was dismissed in violation of the terms set forth in the 2006 Student Handbook, and thus Drexel Medicine was in breach of contract. This first factor has already been resolved by the federal courts in favor of [the individual defendants].
>
> The second factor[,] that final judgment in the previous action was rendered on the merits of the issues[,] has also been met. …

---

[6] **See** Docket No. 2073, January Term, 2016.

J-S53016-18

The third factor has been met as [Ke] was a party to both actions. The fourth factor[,] that the party against whom the defense is raised must have had a full and fair opportunity to litigate the issue[,] was also met. Here, [Ke] initiated the complaint in federal court, litigated his claim, and summary judgment was awarded. Further, the Third Circuit affirmed on appeal, and the U.S. Supreme Court denied further review. *Id.*

Finally, the determination in the federal action was essential to the judgment thus satisfying the fifth factor. The [federal district] Court found that [Ke's] breach of contract claim was without merit, reasoning that:

[Ke] argues that the Student Handbook allowed him to remediate a grade of "MU," and thus he should not have been dismissed for the "MU" in his OB/GYN clerkship. But [Ke]'s contract with [Drexel] had been modified by the conditions imposed by the Dean on his initial re-enrollment, and the conditions imposed by the Promotion Committee after receiving a "U" in the Family Medicine clinical. [Ke] accepted those conditions each time by re-enrolling or continuing his enrollment in [Drexel]. Thus, [Ke] was subject to the more stringent condition that a "MU" was sufficient for his dismissal. And we do not find any evidence in the record that racial animus, either direct or circumstantial, motivated the imposition of those conditions.

*Ke v. Drexel et. al.*, 645 Fed.Appx. at 165.

It is clear that all issues have been litigated and determined finally; and [Ke] cannot relitigate them in this action. Thus, the trial court properly granted [the individual defendants'] preliminary objections.

*Fry*, *supra*, 174 A.3d 75 (unpublished memorandum *3-*4). Ke's petition for allowance of appeal by the Pennsylvania Supreme Court was denied, as well as his petition for *certiorari* in the United States Supreme Court. *See Ke v. Fry*, 183 A.3d 342 (Pa. 2018), *cert. denied*, ___ S.Ct. ___ (U.S. Oct. 1, 2018).

- 9 -

Meanwhile, on October 25, 2017, Drexel filed a motion for summary judgment in the present action asserting Ke's claims were barred by the doctrines of *lis pendens*, *res judicata*, and/or collateral estoppel. Thereafter, Ke filed the following motions: (1) on October 31, 2017, a motion for partial summary judgment; (2) on November 2, 2017, a motion to join individual defendants; (3) on November 6, 2017, a motion to strike certain exhibits attached to Drexel's summary judgment motion; and (4) on December 3, 2017, a motion for leave to seek reconsideration/reinstatement of his cause of action for civil conspiracy. The trial court denied Ke's motion to join individual defendants on December 4, 2017. Ke then file a motion for clarification on December 15, 2017, seeking a determination as to whether the individual defendants were made part of his case on January 26, 2014, when he named them in his amended complaint.

On December 19, 2017, the trial court entered four orders: (1) denying Ke's motion for partial summary judgment; (2) denying Ke's motion to strike certain exhibits from Drexel's summary judgment motion; (3) denying Ke's motion for clarification; and (4) granting Drexel's motion for summary judgment. Ke filed a timely notice of appeal on December 21, 2017. On December 22, 2017, the court entered an order denying Ke's motion to reconsider/reinstate his cause of action for civil conspiracy.

On February 9, 2018, Ke filed a motion for reconsideration of all of the trial court's orders, which the court denied on February 12, 2018, because it no longer had jurisdiction as a result of Ke's appeal. Thereafter, on February

20, 2018, Ke filed a *praecipe* requesting the court direct him to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). The court issued a Rule 1925(b) order on March 8, 2018, and a revised order on March 14, 2018. Ke subsequently filed a Rule 1925(b) statement on March 27, 2018, indicating he was unable to "readily discern the basis for the judge's decision" pursuant to Pa.R.A.P. 1925(b)(4)(vi). Plaintiff's Generalized Statement Pursuant to Rule 1925(b)(4)(VI), 3/27/2018, at 1 (citation omitted).

Ke now raises the following ten issues in his brief:

1. Whether *lis pendens*, *res judiciata*, and collateral estoppel are applicable to the instant case at trial court.

2. Whether fraud or collusion would disqualify *res judicata* or collateral estoppel.

3. Whether Drexel's argument that [Ke] could have sued his state causes of action in federal court is unavailing because it waived it as well as *res judicata* and collateral estoppel when it allowed dual proceedings in both federal and state courts for a full thirty-three (33) months[.]

4. Whether collateral estoppel would apply when such issues as Drexel's violations of Drexel's Code of Conduct, Drexel's Academic Policies, Drexel Medicine's Family Medicine Clerkship Manual, Drexel Medicine's clinical manuals, Drexel's Disability Policy, and Drexel's Official Grading Policy were never litigated in federal court.

5. Whether the trial court should have granted [Ke's] partial summary judgment motion.

6. Whether a summary judgment motion must properly follow its mandatory requirements in both form and content or be stricken.

7. Whether [Ke] has elected to litigate the "breach of contract under Pennsylvania law" claim in state court and both federal and state courts have preserved that claim for him.

8. Whether Pa.R.C.P. 1028(c)(1) allows adding of parties through its amendment clause.

9. Whether under federal and state case law, [Ke's] Count IV: "Civil Conspiracy for Retaliation Purposes against Sahar, Dalton, Hamilton, Fuchs, and Drexel University" should be reinstated.

10. Whether a party has its due process right to amend his complaint under Pennsylvania law.

Ke's Brief at 9-10 (some capitalization omitted).

Ke's first four issues challenge the trial court's grant of summary judgment in favor of Drexel. Our standard of review is well-established:

> Summary judgment is appropriate where the record clearly demonstrates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Atcovitz v. Gulph Mills Tennis Club, Inc.,* 571 Pa. 580, 812 A.2d 1218, 1221 (2002); Pa. R.C.P. No. 1035.2(1). When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party. *Toy*[ *v. Metropolitan Life Ins. Co.*], 928 A.2d [186,] 195 [(Pa. 2007)]. Whether there are no genuine issues as to any material fact presents a question of law, and therefore, our standard of review is *de novo* and our scope of review plenary. *Weaver v. Lancaster Newspapers, Inc.,* 592 Pa. 458, 926 A.2d 899, 902–03 (2007).

*Estate of Agnew v. Ross*, 152 A.3d 247, 259 (Pa. 2017).

Here, the trial court granted summary judgment on the basis that Ke's claims were barred by the doctrines of *res judiciata* and collateral estoppel.[7]

---

[7] The trial court also found Ke's claims were barred by the doctrine of *lis pendens*. **See** Trial Court Opinion, 4/13/2018, at 8-10. However, we agree with Ke's assertion that *lis pendens* is inapplicable in the present case. "To assert successfully the defense of *lis pendens*, *i.e.*, the pendency of a prior action, it must be shown that 'the prior case is the same, the parties are the same, and the relief requested is the same.'" **Richner v. McCance**, 13 A.3d 950, 957–958 (Pa. Super. 2011). Significantly, "[t]he doctrine of *lis pendens*

- 12 -

*See* Trial Court Opinion, 4/13/2018, at 10-12. This Court has held that "[s]ummary judgment is properly granted on grounds of *res judicata* and/or collateral estoppel[.]" ***Grant v. GAF Corp.***, 608 A.2d 1047, 1053-1054 (Pa. Super. 1992), *aff'd*, 639 A.2d 1170 (Pa. 1994).

The doctrine of *res judicata* "reflects the refusal of the law to tolerate a multiplicity of litigation." ***Day v. Volkswagenwerk Aktiengesellschaft***, 464 A.2d 1313, 1316 (Pa. Super. 1983). The doctrine bars a subsequent action when both lawsuits contain the following elements in common:

> (1) identity of the thing sued upon; (2) identity of the cause of action; (3) identity of the parties; (4) identity of the capacity of the parties. Additionally, *res judicata* will bar subsequent claims that could have been litigated in the prior action, but which actually were not[.]

***Robinson Coal Co. v. Goodall***, 72 A.3d 685, 689 (Pa. Super. 2013) (citations and internal punctuation omitted). Moreover,

> "[i]n determining whether res judicata should apply, a court may consider whether the factual allegations of both actions are the

---

requires that the prior action be pending." ***Crutchfield v. Eaton Corp.***, 806 A.2d 1259, 1262 (Pa. Super. 2002). Here, the trial court found the doctrine applied because of the federal action. However, that case concluded on January 9, 2017, when the United States Supreme Court denied Ke's petition for a rehearing after its denial of *certiorari* on October 31, 2016. Furthermore, the second state action was final on October 1, 2018, when the United States Supreme Court dismissed Ke's petition for *certiorari*. Accordingly, because there are no pending actions, the doctrine of *lis pendens* is inapplicable here. ***See*** Drexel's Brief at 11 n.6 (noting it would not brief the *lis pendens* claim because the federal action is "finally concluded"). Nevertheless, the trial court also found summary judgment in favor of Drexel was warranted based upon *res judicata* and/or collateral estoppel. We will focus our analysis on these claims.

same, whether the same evidence is necessary to prove each action and whether both actions seek compensation for the same damages." "If the acts or transactions giving rise to causes of action are identical, there may be sufficient identity between two actions for the summary judgment in the first action to be res judicata in the second."

***Dempsey v. Cessna Aircraft Co.***, 653 A.2d 679, 681 (Pa. Super. 1995) (*en banc*) (internal citations omitted), *appeal denied*, 663 A2d 684 (Pa. 1995).

Closely related to *res judicata*, the doctrine of collateral estoppel is "a broader concept," which "operates to prevent a question of law or an issue of fact which has once been litigated and adjudicated finally in a court of competent jurisdiction from being relitigated in a subsequent suit." ***Day***, ***supra***, 464 A.2d at 1318. Collateral estoppel, or issue preclusion,

applies if (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment.

***Chada v. Chada***, 756 A.2d 39, 42-43 (Pa. Super. 2000) (quotation omitted). Notably, the doctrine of collateral estoppel does not require either "identity of causes of action or parties." ***Id.*** at 43 (citation omitted).

Here, the trial court found Ke's claims in the present case were barred by either *res judicata* or collateral estoppel based on the federal action. With regard to *res judicata*, the court explained the parties in both actions are the same, and both lawsuits were based upon a breach of contract claim resulting in Ke's dismissal from Drexel's medical school. ***See*** Trial Court Opinion,

4/13/2018, at 9. The trial court noted Ke originally included a state law breach of contract claim in his federal action, but later voluntarily dismissed that claim and substituted it with a racially motivated breach of contract claim. *See id.* However, the court found both claims "alleged the same contractual violations." *Id.* Furthermore, the trial court emphasized "*res judicata* bars not only those issues actually raised **but also those issues which could have been litigated in the first action**." *Id.* at 11 (emphasis in original), *quoting* **Day**, *supra*, 464 A.2d at 1318. The court opined:

> As a result, any claim[s] raised in [Ke's] Amended Complaint that are different from those asserted in [Ke's] Federal Court action [are] nevertheless barred because he **could have** brought them in the federal court action. In fact, [Ke] alleged breach of contract in his Federal Court Amended Complaint and then withdrew the claim after filing this action. There is nothing that precluded [Ke] from asserting his Violation of the [UTPCPL] and Consumer Protection Law or his Concerted Tortious Action claim in his Federal Court action. As a result, under the doctrine of *res judicata*, all claims remaining in this cause of action were properly dismissed as well.

*Id.* (emphasis in original).

Similarly, the court found the doctrine of collateral estoppel barred litigation of the claims in the present action as well. Because the parties were the same in the federal action, and Ke had a full and fair opportunity to litigate his claims there, the court explained the only question was whether "the issues decided in the Federal Court action are the same as presented here." *Id.* at 12. Comparing the claims raised in both the present complaint and the federal

complaint, the court concluded "the issues which [Ke] wishes to re-litigate were, in fact, raised, addressed and decided in the Federal Court action." ***Id.***

Ke argues, however, that *res judicata* is "inapplicable per se" based upon the trial court's reasoning for overruling Drexel's preliminary objections in its March 31, 2014, order. Ke's Brief at 17. Ke emphasizes the court found Drexel did not "sustain its burden of proving that the state and federal cases are the same, the parties are the same, and the rights asserted and relief prayed for are the same[,]" particularly because the present action alleges claims based only on state law, while the federal action included claims based on state and federal law. ***Id.*** at 18, quoting Order, 3/31/2014. In any event, Ke insists *res judicata* does not apply when, as here, there was "fraud and collusion involved in the federal district court." ***Id.*** at 22.

With respect to collateral estoppel, Ke insists his state law breach of contract claim was never litigated in the federal action, but rather, he discontinued that claim after he filed the present action, and substituted a racially motivated breach of contract cause of action.[8] ***See id.*** at 19. Moreover, Ke asserts the federal district court did not fully adjudicate the breach of contract claim, finding simply it was duplicative of his intentional discrimination claim. ***See id.*** at 19-20. Therefore, although the Third Circuit

_____

[8] We note Ke blurs the line between his discussion of the doctrines of *res judicata* and collateral estoppel in his brief. However, his argument concerning both doctrines focuses on his assertion that the issues/causes of action in the federal case were not the same as those herein.

discussed the breach of contract claim independent of the discrimination issue, Ke contends this "legal reasoning" should not have "estoppel effect." *Id.* at 20. Moreover, he notes he asserted violations of other contracts in his present action (such as Drexel's Code of Conduct, clinical manuals, and academic policies), but those claims were "never litigated in federal court." *Id.*

Lastly, Ke argues that while "[i]t may be true that [he] could have sued his state claims in federal court," the issue is waived because Drexel did not object to the dual federal and state proceedings for 33 months, from "June 2013 through March 2016." *Id.* at 30-31.

Upon our review of the parties' briefs, the voluminous certified record, and the relevant case law, we find no error on the part of the trial court in granting summary judgment based upon its conclusion that Ke's present action is barred by the principles of *res judicata* and collateral estoppel. First, Ke's reliance on the order denying Drexel's preliminary objections is misplaced. The language in that order upon which he relies is the trial court's rejection of Drexel's **lis pendens** claim, not a discussion of the applicability of *res judicata*. **See** Order, 3/31/2014, at ¶ 3 n.2. Drexel did not assert *res judicata* and collateral estoppel in its preliminary objections because they are affirmative defenses, which are properly raised in new matter. **See Kelly v. Kelly**, 887 A.2d 788, 791 (Pa. Super. 2005) ("[U]nless the facts relied upon to establish it appear from the complaint itself, the defense of *res judicata,* may not be raised by preliminary objections."), *appeal denied*, 905

- 17 -

A.2d 500 (Pa. 2006). Accordingly, the trial court's previous ruling on Drexel's preliminary objections has no bearing on its grant of summary judgment based upon *res judicata*.

Ke also asserts, however, *res judicata* does not apply when the prior judgment was procured through fraud or collusion. **See** Ke's Brief at 21. He lists six examples of purported fraud/collusion that he claims tainted the federal judgment. **See** Ke's Brief at 23-29. Although Drexel maintains Ke did not raise this issue in his response to its motion for summary judgment, we find Ke did allude to collusion between the federal district court judge and Drexel in his answer to Drexel's motion for summary judgment. **See** Plaintiff's Answer to Defendant's Motion for Summary Judgment, 11/23/2017, at ¶¶ 13-16 n.3-4. Nevertheless, the only allegation he made was an assertion that the federal judge's wife "was the sole proprietor of her own medical business and had privileges to practice medicine in many hospitals in Philadelphia including Hahnemann and Friends Hospitals both of which are Drexel Medicine's campuses." **Id.** at ¶¶ 13-16 n.3. He contends that this demonstrates the judge had an "economic interest" in the outcome of this case. Ke's Brief at 27. We do not draw the same conclusion as Ke. This fact alone does not suggest that either the judge or his wife had a financial interest in the outcome of the case. Therefore, we find no evidence of fraud or collusion in the federal case that would bar the application of *res judicata* herein.

Furthermore, we agree with the trial court that *res judicata* and/or collateral estoppel bars Ke's present claims.[9]  Ke admits "the operative facts of both the federal and state suits are the same."  Ke's Brief at 21.  Nonetheless, he argues *res judicata* and/or collateral estoppel do not apply because the "issue of 'Breach of Contract under Pennsylvania Law' was never litigated in the federal court since it was discontinued."  ***Id.*** at 19.  Although he did litigate a racially motivated breach of contract claim, Ke insists the federal district court judge simply rejected the claim because he could not demonstrate racial discrimination, and never considered the breach of contract issue.  ***See id.*** at 19-20.  He therefore discounts the Court of Appeals' subsequent discussion of the issue as having no estoppel effect.  ***See id.*** at 20.

We disagree.  In affirming the district court's grant of summary judgment, the Third Circuit specifically addressed Ke's contention that Drexel breached the terms of the Student Handbook when it dismissed him from the medical school.  The Court opined:

> As noted, we agree with the District Court that the record presents no evidence, direct or circumstantial, of discrimination.  Thus, Ke's claims of a "racially-motivated breach of contract," and his claim that he endured a hostile education environment must fail.  As for the contract claim, Ke argues that the Student Handbook allowed him to remediate a grade of "MU," and thus he should not have been dismissed for the "MU" in his OB/GYN clerkship.  But Ke's contract with DUCOM had been modified by the conditions imposed by the Dean on his initial re-enrollment, and the

_____

[9] As noted *supra*, Ke addresses these doctrines interchangeably.

conditions imposed by the Promotion Committee after receiving a "U" in the Family Medicine clinical. Ke accepted those conditions each time by re-enrolling or continuing his enrollment in DUCOM. Thus, Ke was subject to the more stringent condition that an "MU" was sufficient for his dismissal. And we do not find any evidence in the record that racial animus, either direct or circumstantial, motivated the imposition of those conditions.

*Ke*, *supra*, 645 F. App'x at 165. Therefore, the Third Circuit addressed both Ke's racial discrimination claim **and** his breach of contract claim. The operative facts of the present case are the same as those in the federal action. Ke insists Drexel breached the terms of the Student Handbook when it dismissed him from the medical college. However, as the federal court determined, Ke's "contract" with Drexel was modified when he accepted the terms of his re-enrollment. ***See id.***

With regard to Ke's contention that the present action includes allegations Drexel breached other contracts in addition to the Student Handbook,[10] we reiterate *res judicata* also bars "subsequent claims that could have been litigated in the prior action, but which actually were not[.]" ***Robinson Coal***, ***supra***, 72 A.3d at 689. ***See Chada***, ***supra***, 756 A.2d at 43 (second action alleging fraud in the transfer of real estate was barred by *res judicata* based on judgment in equitable distribution action concern the same real estate: "Although the two lawsuits embody differently entitled 'causes of action' (equitable distribution vs. fraud), we cannot and will not elevate form

___

[10] ***See*** Ke's Brief at 20. Although Ke sets out this claim as the fourth issue in his statement of the questions, he fails to present it as a separate argument in his brief. Rather, he makes passing reference to it in his argument regarding collateral estoppel. ***See id.***

over substance [because the] form in which two actions are commenced does not determine whether the causes of action are identical") (internal quotations omitted). Ke referred to Drexel's violation of its Code of Conduct and clinical manuals numerous times in the factual section of his third amended federal complaint, and specifically averred in the cause of action for breach of contract under Pennsylvania law that "[i]n addition to the violation of the student handbook, Defendants also violated their own Code of Conduct and DCM's clinical manuals[.]" Motion for Summary Judgment, 10/25/2017, Exhibit D (Complaint, Civil Action 11-6708, E.D. Pa, at ¶ 204). Accordingly, not only could Ke have included these other contract claims in his federal action, he actually did so.

With regard to the UTPCPL claim, which was not raised in the federal action, we agree with the reasoning of the panel of this Court in the second state action. In that case, which was filed against the individual defendants, as opposed to Drexel, the allegations of misconduct were the same. The panel found collateral estoppel barred the UTPCPL cause of action in the second state action based upon the federal court's rejection of Ke's breach of contract claim. **See Fry**, **supra**, 174 A.3d 75 (unpublished memorandum at *4) ("Despite the fact that [Ke] is now presenting his claim as a violation of the UTPCPL, the underlying issue is the same.").[11]

---

[11] Ke presents no argument in his brief regarding the cause of action for concerted tortious conduct. Therefore, any objection to the dismissal of that

Ke further argues Drexel's assertion that he could have included his present state causes of action in his federal complaint is waived because Drexel allowed "dual proceedings" in federal and state court to continue from June 2013 until March 2016, a period of 33 months. Ke's Brief at 30-31. We find this argument specious. The record reveals Ke filed his original complaint on December 15, 2013, and Drexel filed timely preliminary objections. Ke then filed an amended complaint on January 26, 2014, to which Drexel again filed preliminary objections, specifically asserting the pendency of the pending federal action barred the present suit. *See* Preliminary Objections to Amended Complaint, 2/18/2014, at ¶¶ 33-42. The trial court denied the preliminary objections on March 31, 2014, and one week later, entered an order staying the present action until the resolution of the federal case. The stay was lifted on November 4, 2015, and two days later, Drexel fled an answer and new matter to the amended complaint, raising the defenses of *res judicata* and collateral estoppel. *See* Answer and New Matter, 11/6/2015, at ¶¶ 266-268. Therefore, Ke's assertion that Drexel acquiesced in the dual proceedings is preposterous. Consequently, we find no basis to disturb the trial court's ruling that *res judicata* and/or collateral estoppel barred the present action.

---

claim is waived. Pa.R.A.P. 2119. Although he addressed the claim in his reply brief, as a response to Drexel's assertion that he failed to state a cause of action, we find his failure to object to the dismissal of that claim in his appellate brief is dispositive.

In his seventh issue, Ke contends he had a constitutional right to litigate his state law breach of contract claim in state court, and both the state and federal courts "de facto preserved that right for him." Ke's Brief at 35. Citing **Bradley v. Pittsburgh Board of Education**, 913 F.2d 1064 (3d. Cir. 1990), Ke insists he was forced to litigate his discrimination claims in federal court, but informed the federal court he wanted to reserve his right to adjudicate his state claims in state court. **See id.** at 38. Our review of the record, however, reveals no mention of this claim in Ke's numerous filings in the trial court. Accordingly, it is waived for our review. **See** Pa.R.A.P. 302(a).

In his fifth, sixth, eighth and tenth issues, Ke challenges the three other orders entered by the trial court on December 19, 2017. His fifth issue asserts the court abused its discretion when it dismissed Ke's motion for partial summary judgment "without even looking at it." Ke's Brief at 39 (challenging order denying motion for partial summary judgment). In his sixth claim, Ke insists the federal court opinions Drexel attached to its motion for summary judgment motion should have been stricken from the record. **See id.** at 39-40 (challenging order denying motion to strike). Lastly, in his eighth and tenth issues, Ke contends the court erred when it precluded him from joining the individual defendants in the present action. **See id.** at 40-41, 43-45 (challenging order denying motion for clarification with respect to the joinder of individual defendants).

We find the trial court thoroughly addressed and properly disposed of these claims in its opinion. **See** Trial Court Opinion, 4/13/2018, at 14-17

- 23 -

(explaining (1) denial of motion for partial summary judgment was proper because breach of contract claim was barred by *res judicata* and/or collateral estoppel; (2) denial of motion to strike was proper because federal court opinions were "not erroneous, as they go directly to the heart of this matter and support [Drexel's] claim as to the application of the doctrines preventing continued re-litigation of [Ke's] claims[;]"[12] and (3) denial of motion for clarification was proper because (a) the individual defendants were never properly served, and (b) Pa.R.C.P. 1028(c) permits the amendment of a pleading, not the addition of new parties).  Accordingly, we rest on the trial court's well-reasoned basis.[13]

The only remaining issue is Ke's assertion that his cause of action for civil conspiracy for retaliation purposes should be reinstated.  **See** Ke's Brief at 41-43.  This claim was dismissed *via* preliminary objections in the trial court's March 31, 2014 order.  On December 3, 2017, he filed a motion for leave to reconsider the dismissal of the civil conspiracy claim, which the court denied on December 22, 2017.  Ke did not list the March 31, 2014, order, in his notice of appeal filed on December 21, 2017, nor did he request to file an amended notice after the trial court denied his reconsideration motion on December 22, 2017.  **See** Notice of Appeal, 12/21/2017 ("Ke hereby appeals

_____

[12] Trial Court Opinion, 4/13/2018, at 15.

[13] We note, too, that with respect to the issues involving the joinder of the individual defendants, any claim now is moot since Ke was permitted to litigate claims against those individuals in the second state action.

- 24 -

to the Superior Court of Pennsylvania from the four orders … docketed on December 19, 2017 [and] the court's repeated denial of [Ke's] motion to amend under Rule 1033, with the latest dated December 4, 2017."). Moreover, his "generalized" Rule 1925(b) statement referred only to the court's "four bare orders," previously listed on the notice of appeal, and did not, in any way, alert the trial court or Drexel that Ke intended to appeal the dismissal of the civil conspiracy claim. Plaintiff's Generalized Statement Pursuant to Rule 1925(b)(4)(VI). Accordingly, we find Ke's ninth issue waived.

We recognize Ke has proceeded *pro se* throughout these proceedings. Nonetheless, as the trial court succinctly explained:

> A party … is entitled to no indulgence by the Court because he or she has decided to proceed *pro se*. **See Abraham Zion Corp. v. After Six, Inc.**, 607 A.2d 1105, 1109-10 (Pa. Super. 1992)[, *appeal denied*, 621 A.2d 576 (Pa. 1993)]. When a party decides to act on his own behalf, he assumes the risk of his own lack of professional legal training." **Wiegand v. Wiegand**, 525 A.2d 772, 774 ([Pa. Super.] 1987)[, *appeal denied*, 538 A.2d 877 (Pa. 1987)]. It is well established in Pennsylvania that pro se parties proceed at their own risk. **O'Neill v. Checker Motors Corp.**, [] 567 A.2d 680, 682 (Pa. Super. 1989).

Trial Court Opinion, 4/13/2018, at 13-14.

Orders affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date:* *11/26/2018*